### EDWARD J. BARTON LIGHTERAGE CO., Inc., v. PAYNE, Agent, etc.

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

No. 231.

**Collision ⊕☞105—Evidence held not to show respondent's vessel in fault.**

The evidence in a suit for collision between meeting vessels *held* not to sustain the allegations of the libel as to the courses of the two vessels, but to show that libelant's vessel was solely in fault.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Edward J. Barton Lighterage Company against John Barton Payne, as Agent, etc. Decree for respondent, and libelant appeals. Affirmed.

Libel was filed for injuries received by libelant's steam lighter Barton, arising from her collision with a car float in tow and on the starboard side of tug No. 26, operated at the time by the respondent as Director General of Railroads.

Libel alleged that the Barton, a vessel about 100 feet long, was on a fair afternoon proceeding down the East River, intending to round the Battery into North River. When about 450–500 feet off Pier 4, East River, she observed on her starboard bow No. 26 and her tow coming into the East River and nearer the Manhattan shore than herself. Then No. 26 sounded two whistles, to which the Barton agreed, whereupon No. 26 "took a sheer to starboard away from the New York shore, and blew one whistle and danger signals." The Barton then backed, also blowing danger signals, and collision promptly ensued between the starboard quarter of the Barton and the forward starboard corner of No. 26's car float.

The court below held that libelant had not sustained the burden of proof laid upon it, and so dismissed the libel. Libelant appealed.

Macklin, Brown & Van Wyck and Horace L. Cheyney, all of New York City, for appellant.

Bigham, Englar & Jones, L. J. Matteson and A. J. McElhinney, all of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). That libelant wholly failed to prove the story of the libel is plainly true. The only arguable point is whether any fault was shown on the part of No. 26.

In support of the libel the master of the Barton was naturally the principal witness. He confirmed his distance from Manhattan shore as 450–500 feet, averred that No. 26 was nearer that shore than he was; that she blew two whistles, and he promptly assented, and went further from the Manhattan shore, while No. 26 in violation of agreement sheered in the same direction, yet collision happened "probably 150 feet" off shore, a distance subsequently changed to 400–500 feet.

This is a flat impossibility. There was a collision, of course. There had been an agreement to pass starboard to starboard, and all agree that No. 26 was nearer Manhattan than was the Barton; but no collision could have happened 150 feet offshore unless the Barton, in violation of agreement, had turned inshore from the course she was pursuing when whistles first blown; and no such collision as undoubtedly did happen could have resulted merely from a change of course by No. 26. This master also deposed to a sequence of whistles wholly at variance with his report to the local inspectors, the making of which he at first said he was not sure of; something we do not remember ever having heard before from the lips of a "licensed man." In sum, no one can place any confidence in the statements of this master; corroboration is necessary for belief.

On the vital point of where collision happened, the outside evidence is all in favor of No. 26. Traffic in the channel between Battery and Governors Island was as active as it usually is on a fair day in early autumn, and the observers agree on two points. No. 26 did not sheer away from Manhattan, and the place of collision was nearer Manhattan than the course of the Barton, as sworn to by her own master and by the No. 26. We think it proven that the proximate cause of collision was a sheer by Barton toward Manhattan—a grave and plain fault.

The question of No. 26's contributory fault depends on whether that vessel stopped and reversed in time. According to the sworn libel, No. 26 backed before the Barton did;

according to the latter's master, he is uncertain whether No. 26 ever backed. The outside witnesses agree that what presented the starboard side of the Barton to the starboard corner of the float was the Barton's backing, and the evidence from No. 26 is direct and unanimous that Barton's backing produced the situation that required No. 26 to back, as a last resource.

We are inclined to believe it affirmatively shown that No. 26 backed as soon as Barton's misconduct developed danger, and we are certain that there is no evidence affirmatively showing No. 26 as at fault for not backing earlier.

Decree affirmed, with costs.